And at this time, we'll hear Slowley v. Van Breamer. Thank you. Good morning. Good morning, Your Honors. And may it please the Court, Jonathan Youngwood for the plaintiff and appellant Maximilian Slowley. On April 1, 2013, Mr. Slowley was involved in a domestic dispute with his then-girlfriend. As a result, he was arrested and charged with three counts, two felonies related to criminal mischief, one charge of harassment, a violation, the only charge that he eventually pled guilty to and the only charge that resulted in a conviction from that day, and a charge of criminal possession of a controlled substance in the seventh degree, a misdemeanor, the only drug charge raised that day. As a result, however, he was brought to the police barracks and subjected to an invasive strip search and visual body cavity exam without any individualized suspicion justifying the exam. That was a violation of his Fourth Amendment rights, and the decision of the district court below to grant summary judgment and dismiss his 1983 case was in error. This is so, Your Honors. Counsel, I have a question. Yes. Yes, Your Honor. What about the drugs that were found in the car? Why is it so questionable? I don't understand. Why weren't they entered into evidence? Well, I don't know why they weren't entered into evidence, Your Honor. Mr. Slowley contends because they didn't exist. There are conclusory statements in the affidavit of Eric Van Bamer, the officer who says that he saw the drugs in the car, that they were located, that he conducted a test, and that they were filed appropriately. But notwithstanding Mr. Slowley's statements at his deposition, multiple times upon questioning from counsel for the State, that he had asked to see the drugs, that he was never shown the drugs, that at times when he asked he was told they were so small you couldn't see, there was no evidence other than two conclusory paragraphs in the affidavit. Well, there's the testimony of the creature on four feet. I'm sorry? There's the dog. Well, the dog, I think, Your Honor, respectfully, is an argument in favor of Mr. Slowley for several reasons. First, the dog apparently alerted outside the vehicle three times, or maybe two times, and I think in the rear, outside the vehicle. And then when the dog alerted inside the vehicle, it was not in the location that the officer claims to have seen the drugs. It was in the center console. It wasn't in the seat. Exactly. So apparently the officer is better at finding the drugs than the dog, with eyes than the dog's nose. Alerted to the console? That is what the testimony is, yes, Your Honor, in the affidavit. And how far is that from the crease between the feet and the back? I would presume — Inches? Inches or feet, Your Honor. I don't know the — Alerted to that, why doesn't that make the cops suspicious at least? Well, Your Honor, again, we only have the testimony of the officer without any proof beyond it. So if the drugs were found, the best evidence would have been the drugs themselves, not the officer's statement about — That would have been the best evidence, but the question is, is there suspicion when a dog alerts to a spot inches from where the man is sitting? I suspect there might be suspicion that there might be drugs. My understanding is these dogs are not completely accurate in what they find. There might be suspicion that there might be drugs in the vicinity. Yes, Your Honor, I would agree that there could be some suspicion from that. But it's a statement, I think, given Mr. Sloly's uncontested statements that he didn't believe there were drugs in the car, that he had had possession of that car for several days. And can't negative suspicion arising from other facts count? We're not having a trial. We're just saying, did the police officer have a suspicion? Well, but, Your Honor, that's what I think is to the jury, whether or not the officer legitimately had a suspicion. And to follow — On the lawfulness of the inspection of the cavity? Well, I think my client, Your Honor, respectfully believes that the officers were not being fully truthful in what they say they found. You're saying that's for the jury? I'm saying that is for the jury, Your Honor, when you have — To decide the lawfulness of the inspection? No, to decide whether or not there were facts giving rise to the inspection, whether or not there were facts sufficient to give rise to the — In a search case, you convene a jury and you say, you find the facts and then I, the judge, will decide whether the search is reasonable? Is that right? No, I think the jury would be instructed on what the law is, as in — You have to decide whether the search is reasonable first in order to know whether the product of the search goes to the jury. Well, Your Honor, I think here the question is whether or not it was — Again, this is not the criminal case. This is the 1983 case. I think the question is whether or not these officers were entitled to qualified immunity and whether or not the search was reasonable. And I think there's a factual dispute, which I will add as long as we're on the dog, relates to the fact that the dog was then brought to my client in a small room, and I think it is uncontested, did not alert. Now, that either is because the dog was close enough to him and did not smell drugs, and therefore that's a fact in his favor, or he wasn't brought close enough to him, and that was an error on the officer's part because they should have done that, given that they had the dog, before they brought him into another room and conducted a visual cavity search of him. Excuse me. He also didn't alert to any item of the defendant's clothing. Precisely, Your Honor. He was taken off. Precisely, Your Honor. That was brought before the dog, wasn't it, as each piece of clothing was taken off? I'm not sure of that, Your Honor, but the dog was brought to the vicinity of the plaintiff, then the individual in custody, in the room. And if you want to believe the officer's both version of the facts and deductions taken from them, you have the crumbs of the crack where the cocaine on the seat of the vehicle. Apparently, my client's sitting on that seat, and yet a dog brought near him and not reacting in any way to that clothing, or they didn't test it. Either way, it's a problem for the officers, and instead they just proceeded to have him remove his clothing one piece at a time. When that didn't work and they didn't find anything in it, they had him conduct the visual cavity exam, which truly is about as invasive an exam as one can conduct on somebody who's been arrested, short of an actual physical touching, which did not occur here. And so the dog, Judge Jacobs, which you raise is, I don't want to use clichés, but it is the dog that didn't bark when it was brought in front of my client. You know, it seems to me that Gonzalez is a problem for you, and it might be insurmountable, but it's only a problem if the defendants are arguing that the standard of suspicion for a felony is less than for a misdemeanor. And I see a footnote here on page 7 of the district court's opinion saying defendants do not assert that a less demanding standard should apply because Stolle was also arrested for a felony. That's footnote 4. Yes, Your Honor. Am I correct that the defendants are not arguing for the distinction that was decisive in Gonzalez? I will certainly let them raise their own points here before this Court, but I don't believe they argued it below, Your Honor, and so I don't believe they can argue it here. But I will also just briefly address Gonzalez, and then I'll — Please. If it is — well, here's why I do not actually believe even were they to argue that we have a higher standard on a felony that Gonzalez is a problem. First, in Gonzalez, this Court recognized the long line of cases of the Second Circuit going back at least as far to 1986 in Weber that the — at least for misdemeanors or other minor offenses, you still need the individualized standard to be established. I submit to you, and it's why I began by reading you the charges, the only drug charge we had here was a misdemeanor. We have completely unrelated felony charges that never went anywhere, stemming from a domestic dispute, that have nothing to do with drugs. And so I would argue that Weber is what would control the standard here, regardless of what position defendants take. And second, I would say that Gonzalez was decided in the context of Hall and looking at Hall and considering Hall, recognizing it's not a decision of this Court or of the Supreme Court, but it was an important enough case for this Court to discuss it at length in Gonzalez. And the difference here is the timeline. In Gonzalez, as this Court recognized, Hall came too late to help the plaintiff in that case. Here — But there was no negative pregnant that if it had arrived in time, it would have — Your Honor, I will — Judge Pooler and I are quite — I will leave it to you and Judge Pooler as to what was — Right. What is behind the decision. But I will note that the Court did note the timeline, and here the timeline is Hall coming five years before the incident. And so even if I do need to argue that I need to win under a felony standard, the felony standard I would point to is Hall. But you are not arguing that you need to win under a felony standard. I don't believe I need to win under a felony standard. You're willing to argue it, but you don't need to. I don't need to, I think, both for footnote four that you pointed out of the district court and what comes behind it and how we got there, and also, Your Honor, because I don't think this case involved a felony drug charge. One point made in Gonzalez is that one reason you might have a different standard for felony drug charges is that they involve allegations of drug dealing. Whatever you think was going on in that car with the little cracks of — or little dust of cocaine, there's no suggestion here that this was a drug dealer dealing drugs out of this car. One of the grounds of suspicion urged by the defendants is that your client had a reputation of being a drug dealer. Indeed, he'd been convicted a long time earlier of a drug offense and had been arrested for another drug offense closer in time. Well, Your Honor, he had been convicted precisely 16 and 17 years earlier. And so if the law is that once convicted almost two decades earlier, you're automatically subject to an anal cavity search, I just don't think that's the law. And as you say, the other one was an arrest without a conviction. But I see my time on opening has expired and I have time reserved. But if there are more questions, I'm happy to answer them now or when I — We'll hear you on rebuttal. Okay. Good morning, Your Honors. If I could begin with the qualifying immunity point because that's where we left off. The state is arguing, or defendants are arguing, that the law is unsettled as of Gonzales as to the difference between misdemeanors and felonies. That's — Look, but I'm looking at this footnote, which I noticed very late in my preparation of the case. It says defendants do not assert that a less demanding standard should apply because Stoley was also arrested for a felony. Well, in our briefs throughout in the district court and here, we're assuming for the sake of argument that that standard would apply. And I think it's important to note that for qualified immunity purposes — Well, you're assuming for the sake of argument, meaning, I take it, for the sake of argument in this case. Yes, Your Honor. If you're assuming for the sake of argument in this case, you are not arguing for a different standard. Well, Your Honor, we're highlighting what we believe to be a common-sense position that if the standard hasn't been settled, we haven't violated a clearly established standard. But it has been settled with respect to misdemeanors. With respect to misdemeanors, but this crime also involved felonies. Now, Your Honor — Can I ask you about that? The felony you're relying on is criminal mischief in the third degree? That's correct, Your Honor. Did that criminal mischief relate to the domestic violence or to drugs? To domestic violence, Your Honor. Well, if there's a felony for something that won't be investigated by a cavity search, then what difference does that felony make? Your Honor, our point is that the law is unclear recognizing that distinction, but I really don't want to belabor the point because this is only one half of the qualified immunity analysis. Assume that there is a rule that reasonable suspicion is required for this kind of search. We don't want to belabor the point either, but that's where you started. Yes, Your Honor. So if I could seg into my next point, it is that there is arguable reasonable suspicion here because Eric Van Bramer had no clear law saying that the circumstances available to him gave him no reasonable suspicion to conduct a visual cavity search. As to a misdemeanor? As to a misdemeanor. Now, you heard my adversary say that he should have put the dog by Mr. Slowly and conducted a dog sniff. This Court has never said so. This Court has never ruled that in a situation where a police officer recovers an amount of drugs from a suspected drug dealer and a canine alert indicates that there could be more drugs, that a visual cavity search is unlawful. Mr. Slowly argues that the canine alert in the center console seems to indicate that there were no drugs. We would point to two cases that we cited in our brief, Warfield and Kelly. They're out of the Sixth Circuit. The alerts would indicate, assuming the dog is infallible, which I actually assume, that there were drugs there at some point. Yes, Your Honor. But this was not his car. This was his mother's car. That's correct, Your Honor. But what Eric Van Bramer knows at the time is that Slowly is driving the car, that the drugs are found in the crease of the driver's seat. He doesn't have any reason to believe that there was anyone else in the car at the time. I have a question. Yes, Your Honor. Sorry. Why were the drugs not entered into evidence? Your Honor, there was no need to enter the physical drugs into evidence in this civil case. And, frankly, the affidavits themselves, this is a summary judgment case. These affidavits are not conclusory, as Mr. Slowly suggests. You have Eric Van Bramer saying in a sworn affidavit that's recognized time and again is sufficient for summary judgment, his version of the facts, that he goes to the car, he finds crumbs. He says that he field tests them. He details how he performs the field test. And then he indicates that he collects the drugs, gives them to Brian Van Bramer. Brian Van Bramer isn't there for the search, but he at least corroborates that evidence represented to be cocaine was given to him that he then puts into the evidence locker. Mr. Slowly disputes the facts of that. He says, I don't do drugs, and nothing on his clothing indicated that there were any trace of drugs. Why isn't that a question of fact that obviates summary judgment? Your Honor, the presence of drugs on his clothing would not obviate whether or not Mr. Van Bramer recovered. I'm sorry. I didn't hear you. He was sitting in the very car where the crumbs were allegedly found, correct? Yes, Your Honor. And he takes off his pants, and there's no alerting by the dog for anything on his pants. Why isn't this a question of fact that should prevent the granting of summary judgment? Well, Your Honor, there's two answers to this question. One, the fact that he's checking clothes and doesn't find drugs doesn't make it improbable or doesn't dispute that there were drugs recovered in the first place. That would go to whether there was reasonable suspicion. And two, if he doesn't see drug residue on Mr. Slowly's clothes, this Court has never held that you need to then stop and can't proceed to conduct a visual cavity search. Eric Van Bramer has no guidance on that point. Now, Mr. Slowly's theory doesn't even require corroboration. He's simply stating in conclusory fashion that Eric Van Bramer is lying. If I could direct this Court to— All of this seems rather thin, but my impression is that the defendants relied for their individualized suspicion on the statement by the plaintiff's girlfriend that he had drugs. But she denies that now. And not only that, she denies that she told that to the police. So it would appear that one of the major props that would otherwise support individualized suspicion is now an issue of fact. Your Honor, the Court— And that would be for a jury. And if you don't get qualified immunity now and later it's determined that she told this to the police, maybe they would have an individualized suspicion then and you get qualified immunity then. Your Honor, that would be relevant to why Eric Van Bramer was sent to the car in the first place. This is a civil case. There's no fruit of the poisonous tree here. The district court addressed Ms. Rollins' statement and found it to be immaterial. What we're looking at comes after the search happened. And after the search happened, Eric Van Bramer finds a substance that tests positive for drugs in plain view. Eric Van Bramer has a canine sniff in an area in the car that doesn't turn up drugs, signifying that there might have been drugs. Eric Van Bramer has information from other people that Mr. Slowly is associated with drug dealing. It seems that you have to defend the idea that any time trace amounts of drugs are found in a car, that the occupant or driver can be subjected to a body cavity search. Oh, no, Your Honor. What additional happened? Well, that was what I was listing, Your Honor. There is the recovery of drugs. There is a canine alert signaling that there could be more.  I said you find trace amounts of drugs. So you recover the trace amounts of drugs. What else is there? The canine alert signifying that there could be more. The reputation as a drug dealer. But they didn't find any more. They didn't find any more after the fact. But the canine alert indicates the canine is positively alerting. There aren't any drugs recovered. An officer within his experience. I thought you said drugs were recovered from the seat. There were drugs recovered from the seat. But the dog alerted. The dog alerted in the center console from which no drugs were recovered. Eric Van Bramer, having recovered the trace amount of drugs in the seat and having that canine alert, is certainly entitled to deduce that there could be more drugs. He has reason to believe that Maximilian Sloly, who he knows by reputation as a drug dealer, there is a confirmed history of selling cocaine, the very substance found in the car, and he knows that he's fleeing from a crime scene. All of these facts taken together. Can I interrupt? Yes, Your Honor. This very dog is right there with Mr. Sloly as he's being undressed preparatory to this search. Is that correct? That's not correct, Your Honor. Tell me where it's wrong. Mr. Sloly indicates that Eric Van Bramer comes in with the dog, that the dog walks right by him, doesn't do anything, and then loiters around as though waiting for a command. Sloly is not describing a targeted canine search. And, frankly, we were not confronted with this allegation. Otherwise, at the district court level, we would have produced more facts indicating exactly how canine searches work. Dogs don't simply start barking whenever they're in the presence of drugs. Otherwise, they would. Counsel, this is summary judgment. If you had more facts, you were supposed to produce them before the district court. Is there something off your sleeve that you want to produce just for us? Your Honor, we would argue the exact opposite, which is that we weren't confronted with an argument that the dog didn't alert as that being something that doesn't support reasonable suspicion. Had we been confronted with that, we would have produced those facts. So if you don't want me to describe the drug searches, I will cease to do that. And I will give the additional point that there is no clearly established law from this court that says that if you have a canine dog, you have to walk it up to a suspect, have that dog sniff. Now, if the court wants to clarify that this is the rule, the court is certainly welcome to do so. We don't oppose that. However, Eric Van Bramer was not under any binding legal obligation to do so. I would direct this court's attention to page 162 of the Gonzalez decision, which gives an explication about qualified immunity. Eric Van Bramer is acting in good faith, confronted with facts that indicate to him in real time making his SNAP decisions that he has a basis for the search. He is working within a legal framework that this court in 2013 described as far from settled and kaleidoscopic. Since 2013, the law has not become any clearer. Under these circumstances, the law may be kaleidoscopic, which means that variables, factual variables, can have tremendous effect, can change the whole perspective. But you still need something to justify the body cavity search as opposed to just the search of the car and just the strip search. Your Honor, we have listed out those factors. They are the recovery of the drugs combined with the canine alert. All of that supports a strip search, arguably, and the question is what is there that would cause someone to go on? I mean, just the fact that you don't find any drugs is not the basis for suspicion. I mean, usually most people would consider if you don't find any drugs, that's a basis for losing the suspicion that you entertained in the first place. Your Honor, it's not simply that he didn't find drugs in a vacuum. It is that the canine positively alerted in the place where there were no drugs found. It indicates that drugs had recently been there. A police officer is entitled to infer that drugs had recently been there. They're not there. And combined with the other variables, Eric Van Bramer is entitled under the reasonable suspicion standard or at least the arguable reasonable suspicion standard to believe that Sloly was hiding them either on his person or in his person. Thank you. We'll hear from him. Your Honor, I think it might be useful to walk through exactly what the elements are that I believe defendant's claim gave justification here to a visual cavity search and a strip search. There is the alleged statement of Ms. Rollins, but that statement is now contradicted, so that needs to be a fact question. There are the statements that there were long ago convictions, and I do not believe the law says that somebody who was convicted almost two decades ago of something is permanently under suspicion for continuing to carry out that activity. There is the, again, conclusory allegation of rumors in the community that Mr. Sloly had involvement in drugs, but the only actual testimony direct on that comes from Mr. Sloly, who on page 99 of his deposition states that he'd never been in trouble in that county before. So I don't know what those rumors are based on, but maybe at most, again, it is a factual issue. There is the dog, which I think is now full of factual issues as to what the dog did, what it smelled, where it alerted, how close it was to Mr. Sloly. I want to understand. Are you saying whether the dog alerted at the console is in dispute? I'm saying that we have the statement of one officer who observed it. If, to take Judge Jacobs' words, the dog is infallible, that means there were drugs there, and we have the contradictory testimony from my client that there were no drugs there. In that respect, it was in dispute, but since it was only the dog and the one trooper, it's hard to we can't go back in time and say what the trooper saw. We can judge the conclusions the trooper made. You can't go back in time to reconstruct the scene, but if you are saying it's in dispute whether the dog did alert, that may suggest you go to a jury to see do they believe the officer. Well, that is what I'm saying, Your Honor, because I You are disputing whether the dog alerted at the console. Your Honor, I think it probably goes into whether the dog alerted combined with how infallible these dogs are, and so what would a reasonable conclusion be if you believe the officer was telling the truth? Does that also lead to a conclusion that there were drugs, for example, on the side of the car where the dog also allegedly alerted, which I don't understand? I'm not pressing you about how reliable a dog is, because I think an officer is entitled to think the dog is reliable. I'm pressing you as to whether it's in dispute that the dog did alert at the console. I think my client's view is that there were no drugs in the car, and therefore it was impossible for the dog to legitimately alert. Sounds like a dispute. Yes, Your Honor. I don't want to over-argue when my client isn't saying he was in the car at the time he wasn't. You're seeking damages for the strip search as well as the body cavity search? Yes, Your Honor. You're saying there was no individualized suspicion supporting the strip search either? That is correct, Your Honor, and I think what is in the law, and it's in the misdemeanor cases and the felony cases, is you need to proceed here with deliberateness and care, and if you believe, for example, there was powder on the seat and the gentleman sat in the seat, you should start with the pants. And either they didn't start with the pants or they did and they didn't find anything, but the idea of then not finding something says I need to look harder, that's not what the law is in these circumstances or there'd be never end to the looking. I'm still not clear what you said to the district judge in opposition to summary judgment. They made a motion for summary judgment. Yes. Did you contend before the district judge that it is in dispute, A, whether the dog alerted at the console and, B, whether any even trace amounts of drugs were found in the seat? The statement submitted by my client, who was at that point pro se, is a handwritten statement that the district court considered under the standards, you know, applicable in pro se cases. He has one paragraph, it's in Document 46, Paragraph 1, where he generally speaks, it may not have been what he would have written if he had assistance of counsel. The state police made a false statement claiming that they observed drugs in the driver's seat, but supposedly they have no physical evidence of such findings. Where are the drugs? Why wasn't there ever any proof of such findings? That's what he said, but he also had on the record his deposition testimony, which does not speak to what happened in the car, he wasn't there, but does speak on page 85 to the dog being in the room with him and not alerting. And in part that said, did you ever ask to see the narcotics? My clients answered, yes, you did, yes. Who did you ask? The cops, the troopers. When did you do that? In the barracks. And so you said, show me the drugs. I said, what drugs? Where is it? He said, it's too small to see. It's crumbs. It's too small. And there is also a section in the transcript, and I'll perhaps conclude with this if there are no other questions, about his encounter with the dog. And in part, this is on page 63, it's document 41 in the record, but at some point the other Van Brammer walks in with a K-9, so the K-9 walks right past me like I'm not even there. He doesn't even acknowledge me. And then it's a question as to which Van Brammer he's talking about. So there is not testimony, and there's not specific mention of the dog in the car, but there is this broad paragraph written by a pro se non-lawyer, I submit to Your Honor, taking on the very issue as to what happened in that car. Thank you. Thank you, Your Honors. Thank you both. We'll reserve decision. Very well argued. Thank you, Your Honor. Yes, indeed.